# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### WAYCROSS DIVISION

STEPHEN WYATTE,

            Plaintiff,

    v.

HOMER BRYSON; ROBERT TOOLE;
EDWINA JOHNSON; TOM GRAMIAK; and
NATHAN BROOKS,

            Defendants.

CIVIL ACTION NO.: 5:15-cv-92

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, currently an inmate at Washington State Prison in Davisboro, Georgia, filed this action while housed at Ware State Prison in Waycross, Georgia, pursuant to 42 U.S.C. § 1983. (Doc. 1.)  In his Complaint, Plaintiff contested certain conditions of his confinement while housed at Ware State Prison.  After being transferred to Washington State Prison, Plaintiff filed a Motion to Add Parties, (doc. 15), a Second Motion to Amend his Complaint, (doc. 19), and a Motion for a Preliminary Injunction and Temporary Restraining Order, (doc. 20).  After review, the Court **DENIES** Plaintiff's Motion to Amend his Complaint and his Motion to Add Parties (docs. 15, 19).  Further, for the reasons which follow, I **RECOMMEND** that the Court **DISMISS** Plaintiff's Complaint for failure to state a claim, and **DISMISS** his Motion for Preliminary Injunction and Temporary Restraining Order (doc. 20).

# BACKGROUND[1]

Plaintiff, who is currently incarcerated at Washington State Prison in Davisboro, Georgia, filed this action contesting certain conditions of his confinement which arose while he was housed at Ware State Prison in Waycross, Georgia. Upon his arrival at Ware State Prison on May 21, 2013, Plaintiff was assigned to the Tier II Segregation Housing Unit ("Tier II Unit") due to his alleged affiliation with the "Goodfellas Gang." (Doc. 1-1, p. 3.) Plaintiff contends that he is not affiliated with the Goodfellas Gang and that Defendant Toole falsely labeled him as a gang member. (Id.) Plaintiff further contends that he did not meet Ware State Prison's standard operating procedure's requirements for being placed in the Tier II Unit and that he did not have an adequate opportunity to contest his confinement prior to his assignment to administrative segregation. (Id.) Plaintiff further alleges that, after his label as a gang member was removed, Defendants falsified disciplinary reports in an effort to prolong his detention in the Tier II Unit. (Id.) Finally, Plaintiff alleges that Defendants negligently placed his life in jeopardy by incorrectly classifying him as a Goodfellas Gang member because that classification subjected him to retaliation from inmates belonging to rival gangs. (Id. at p. 4.)

After filing his Complaint, Plaintiff was transferred to Washington State Prison in Davisboro, Georgia. (Doc. 10.) Upon his arrival at Washington State Prison, Plaintiff was again placed in the Tier II Unit at that facility. (Doc. 19, p. 3.) Plaintiff then filed a Motion to Add Parties and a Second Motion to Amend or Correct his Complaint in this Court in order to assert identical claims against parties employed at Washington State Prison. (Docs. 15, 19.) Plaintiff also filed a Motion for a Preliminary Injunction and Temporary Restraining Order requesting release from the Tier II Unit at Washington State Prison. (Doc. 20.)

---

[1] The Court takes the following facts from Plaintiff's Complaint and construes them as true, as it must at this stage.

In his original Complaint, Plaintiff sued Homer Bryson, the Commissioner of the Georgia Department of Corrections; Robert Toole, the Field Operation Manager of the Georgia Department of Corrections; Tom Gramiak, the Warden at Ware State Prison; Edwina Johnson, the Deputy Warden of Care and Treatment at Ware State Prison; and Nathan Brooks, the Unit Manager at Ware State Prison. (Doc. 1.) Plaintiff requests a declaratory judgment, compensatory and punitive damages, a preliminary and permanent injunction, and a temporary restraining order. (Id. at pp. 6–7.)

## STANDARD OF REVIEW

Plaintiff seeks to bring this action *in forma pauperis* under 42 U.S.C. § 1983. Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all of his assets and shows an inability to pay the filing fee and also includes a statement of the nature of the action which shows that he is entitled to redress. Even if the plaintiff proves indigence, the Court must dismiss the action if it is frivolous or malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii). Additionally, pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity. Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous or malicious, or fails to state a claim upon which relief may be granted or which seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

When reviewing a Complaint on an application to proceed *in forma pauperis*, the Court is guided by the instructions for pleading contained in the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R.

Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances). Further, a claim is frivolous under Section 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'" Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under Section 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010). Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555. Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys.") (emphasis omitted) (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)). However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as

to excuse mistakes by those who proceed without counsel."). The requisite review of Plaintiff's Complaint raises several doctrines of law which require the dismissal of the Complaint.

## DISCUSSION

As an initial matter, this Court must give deference to prison officials on matters of prison administration and should not meddle in issues such as the contents of a prisoner's file. Courts traditionally are reluctant to interfere with prison administration and discipline, unless there is a clear abuse of discretion.  See Procunier v. Martinez, 416 U.S. 396, 404–05 (1974) ("Traditionally, federal courts have adopted a broad hands-off attitude toward problems of prison administration [because] ... courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform."), *overruled on other grounds by* Thornburgh v. Abbott, 490 U.S. 401 (1989).  In such cases, "[d]eference to prison authorities is especially appropriate." Newman v. Ala., 683 F.2d 1312, 1320–21 (11th Cir. 1982) (reversing district court's injunction requiring release of prisoners on probation because it "involved the court in the operation of the State's system of criminal justice to a greater extent than necessary" and less intrusive equitable remedy was available); see also, Thornburgh, 490 U.S. at 407–08 ("Acknowledging the expertise of these officials and that the judiciary is 'ill equipped' to deal with the difficult and delicate problems of prison management, this Court has afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world."); Bell v. Wolfish, 441 U.S. 520, 547 (1979) (acknowledging that courts have "accorded wide-ranging deference [to prison administrators] in adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."); Jones v. North Carolina Prisoners' Labor Union, 433 U.S. 119, 129 (1977) ("Prison officials must be free to take

appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape or unauthorized entry."); Bradley v. Hart, No. CV513-127, 2015 WL 1032926, at *10 (S.D. Ga. Mar. 9, 2015) ("It does not appear to be appropriate for this Court to order that prison officials remove entries from Plaintiff's file, which may or may not be accurate.").

Further, in order to state a claim for relief under Section 1983, a plaintiff must satisfy two elements. First, a plaintiff must allege that an act or omission deprived him "of some right, privilege, or immunity secured by the Constitution or laws of the United States." Hale v. Tallapoosa Cty., 50 F.3d 1579, 1582 (11th Cir. 1995). Second, a plaintiff must allege that the act or omission was committed by "a person acting under color of state law." Id. Plaintiff alleges that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment due process and equal protection rights. As a result, he requests declaratory and injunctive relief, as well as compensatory and punitive damages. The Court will assess each of Plaintiff's claims and requests in turn.

## I. Motion to Add Parties, Motion to Amend, and Motion for a Temporary Restraining Order

Plaintiff is currently incarcerated at Washington State Prison and remains confined in that facility's Tier II Unit. Therefore, Plaintiff has sought permission to amend his original Complaint by adding the following parties employed at Washington State Prison: Warden T.J. Conley; Deputy Warden of Security Karl Fort; Deputy Warden of Care and Treatment Glenn Fleming; and Captains Matthew Snowden and Paula Duncan. (Docs. 15, 19.) In addition, Plaintiff filed a Motion for a Temporary Restraining Order seeking emergency injunctive relief from the proposed Washington State Prison Defendants. However, as discussed below, Plaintiff may not assert claims against or obtain relief from employees of Washington State Prison in this Court.

For meritorious claims, Federal Rule of Civil Procedure 15(a) requires that leave to file an amended complaint be freely given when justice so requires. Courts may deny leave to amend because of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Foman v. Davis, 371 U.S. 178, 182 (1962).

Allowing Plaintiff to once again amend his Complaint to add claims regarding Washington State Prison would be futile because this District is not the proper venue for those claims. 28 U.S.C. § 1391(b) sets forth the applicable venue provisions:

> A civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

It appears that Plaintiff's proposed additional Defendants are located at Washington State Prison in Washington County, Georgia. Furthermore, Plaintiff's claims against these Defendants stem from events allegedly taking place in that county. Washington County is located in the Athens Division of the Middle District of Georgia. See 28 U.S.C. § 90(b)(2) (defining the federal judicial districts in Georgia). Thus, it appears that venue lies in that District pursuant to 28 U.S.C. § 1391(b).

Moreover, allowing Plaintiff to proceed against the Washington State Prison and Ware State Prison official jointly in this action would constitute improper joinder. Pursuant to Federal Rule of Civil Procedure 20(a)(2) ("Rule 20(a)(2)"), a plaintiff may not join various defendants in

one action unless two prongs are satisfied: (1) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences"; and (2) "any question of law or fact common to all defendants will arise in the action."  In determining whether to allow joinder, a district court "is guided by the underlying purpose of joinder, which is to promote trial convenience and expedite the resolution of disputes, thereby eliminating unnecessary lawsuits." Swan v. Ray, 293 F.3d 1252, 1253 (11th Cir. 2002) (internal quotation marks omitted) (quoting Alexander v. Fulton Cty., 207 F.3d 1303, 1323 (11th Cir. 2000), *overruled on other grounds by* Manders v. Lee, 338 F.3d 1304 (11th Cir. 2003)).  Under the first prong, the term "transaction" is flexible and comprises "all logically related events entitling a person to institute a legal action against another." Alexander, 207 F.3d at 1323 (internal quotation marks omitted) (stating that allegations of a "pattern or practice" of discrimination would describe such logically related events so as to meet the transaction requirement).  The second prong "does not require that all questions of law and fact raised by the dispute be common, but only that some question of law or fact be common to all parties." Id. at 1324.

Even accepting Plaintiff's factual allegations as true, Plaintiff fails to show that the first prong of Rule 20(a)(2) is satisfied.  Plaintiff asserts no single right to relief against all Defendants jointly, severally, or in the alternative.  Plaintiff cites Section 1983 and his rights to due process and to be free from cruel and unusual punishment as grounds for relief against all proposed Defendants.  However, Plaintiff's asserted rights to relief arise out of isolated instances, in which Plaintiff believes different officials at separate facilities failed to follow prison policy concerning placement in administrative segregation.  While Plaintiff maintains that he was denied a disciplinary hearing at each facility, Plaintiff offers no facts demonstrating that

his alleged deprivation at Washington State Prison bore any relation to his housing placement at Ware State Prison. Consequently, Plaintiff fails to establish any plausible basis for holding Ware State Prison officials jointly and severally liable for the independent decisions of the officials at Washington State Prison.

For all of these reasons, the Court **DENIES** Plaintiff's Motion to Add Parties and Motion to Amend his Complaint. Moreover, because claims and Defendants relating to Washington State Prison are not properly before this Court, the Court should **DISMISS** Plaintiff's Motion for a Preliminary Injunction and Temporary Restraining Order..

## II.     Plaintiff's Claims for Injunctive Relief

In his Complaint, Plaintiff requests that this Court issue preliminary and permanent injunctions requiring Defendants to release Plaintiff from Tier II confinement and to grant him the privileges reserved for inmates held in general population. (Doc. 1, p. 6.) However, Plaintiff's injunctive relief claims against Defendants Bryson, Toole, Gramiak, Johnson, and Brooks are now moot because Plaintiff is no longer housed at Ware State Prison. An inmate's claim for injunctive relief against prison officials is subject to dismissal for mootness when the prisoner is transferred to another prison and is no longer under the control of the prison officials against whom injunctive relief is sought. Spears v. Thigpen, 846 F.2d 1327, 1328 (11th Cir. 1988) (per curiam); Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985) (per curiam) ("Absent class certification, an inmate's claim for injunctive relief and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred."). Thus, the Court should **DISMISS AS MOOT** Plaintiff's claims for injunctive relief against Defendants Bryson, Toole, Gramiak, Johnson, and Brooks.

### III.    Plaintiff's Claims for Monetary Damages

Plaintiff cannot sustain a Section 1983 claim for monetary damages against Defendants in their official capacities. States are immune from private suits pursuant to the Eleventh Amendment and traditional principles of state sovereignty. Alden v. Maine, 527 U.S. 706, 712–13 (1999). Section 1983 does not abrogate the well-established immunities of a state from suit without its consent. Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989). Because a lawsuit against a state officer in his official capacity is "no different from a suit against the [s]tate itself," such a defendant is immune from suit under Section 1983. Id. at 71. Here, the State of Georgia would be the real party in interest in a suit against Defendants in their official capacities as employees of the Georgia Department of Corrections. Accordingly, the Eleventh Amendment immunizes these actors from suit in their official capacities. See Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989). Absent a waiver of that immunity, Plaintiff cannot sustain any constitutional claims against Defendants in their official capacities for monetary relief. The Court should **DISMISS** these claims.

Plaintiff also seeks compensatory and punitive damages from Defendants in their individual capacities. (Doc. 1, p. 2.) However, Plaintiff did not allege that he suffered any physical injury as a result of Defendants' actions. "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The purpose of this statute is "to reduce the number of frivolous cases filed by imprisoned plaintiffs, who have little to lose and excessive amounts of free time with which to pursue their complaints." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (citing Harris v. Garner, 216 F.3d 970, 976–79 (11th Cir. 2000)). "Tracking the language of [this] statute, § 1997e(e)

applies only to lawsuits involving (1) Federal civil actions (2) brought by a prisoner (3) for mental or emotional injury (4) suffered while in custody." Id. at 532. In Williams v. Brown, 347 F. App'x 429, 436 (11th Cir. 2009), the Eleventh Circuit held that, "compensatory damages under § 1983 may be awarded only based on actual injuries caused by the defendant and cannot be presumed or based on the abstract value of the constitutional rights that the defendant violated. Pursuant to 42 U.S.C. § 1997e(e), in order to recover for mental or emotional injury suffered while in custody, a prisoner bringing a § 1983 action must demonstrate more than a *de minim[i]s* physical injury." Id. (internal citations omitted) (alterations in original).

Plaintiff's failure to allege that he has suffered any physical injury is fatal to his claims for compensatory and punitive damages. Al-Amin v. Smith, 637 F.3d 1192, 1199 (11th Cir. 2011) ("In sum, our published precedents have affirmed district court dismissals of punitive damage claims under the PLRA because the plaintiffs failed to meet § 1997e(e)'s physical injury requirement."). Consequently, the Court should **DISMISS** Plaintiff's claims for monetary damages.

## IV. Declaratory Judgment

Plaintiff also requests this Court enter a judgment declaring that the acts and omissions of the Defendants violate the Constitution and the laws of the United States. (Doc. 1, p. 6.) "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a). The Declaratory Judgment Act "does not, of itself, confer jurisdiction upon the federal courts; a suit brought under the Act must state some independent

source of jurisdiction[.]" <u>Mata v. Sec'y of Dep't of Homeland Sec.</u>, 426 F. App'x 698, 699 (11th Cir. 2011) (quoting <u>Borden v. Katzman</u>, 881 F.2d 1035, 1037 (11th Cir. 1989)). A party who is seeking to invoke the court's jurisdiction "must show: '(1) that [he] personally [has] suffered some actual or threatened injury as a result of the alleged conduct of the defendant; (2) that the injury fairly can be traced to the challenged action; and (3) that it is likely to be redressed by a favorable decision.'" <u>Am. Ins. Co. v. Evercare Co.</u>, 430 F. App'x 795, 798 (11th Cir. 2011) (quoting <u>GTE Directories Publ'g Corp. v. Trimen Am., Inc.</u>, 67 F.3d 1563, 1567 (11th Cir. 1995)). "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." <u>Id.</u> (internal citation and punctuation omitted). As discussed above in regards to Plaintiff's injunctive relief claims, any equitable relief this Court may grant as to the Ware State Prison Defendants would not redress any actual or threatened injury because Plaintiff is no longer housed at that facility. Moreover, as discussed below, Plaintiff has not shown that he has suffered an actual or threatened injury or that a favorable decision would redress any purported injury he sustained at Ware State Prison. Therefore, Plaintiff's request for a declaratory judgment should also be **DENIED**.

V.      **Eighth Amendment Claims**

    A.      **Cruel and Unusual Punishment**

The cruel and unusual punishment standard of the Eighth Amendment requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care." <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994). Generally speaking, however, "prison conditions rise to the level of an Eighth Amendment violation only when they involve the wanton and

unnecessary infliction of pain." Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004) (quotations omitted). Thus, not all deficiencies and inadequacies in prison conditions amount to a violation of a prisoner's constitutional rights. Rhodes v. Chapman, 452 U.S. 337, 349 (1981). The Constitution does not mandate comfortable prisons. Id. Prison conditions violate the Eighth Amendment only when the prisoner is deprived of "the minimal civilized measure of life's necessities." Id. at 347.

Even accepting Plaintiff's assertions as true, they do not plausibly state an Eighth Amendment claim. The conditions imposed in "administrative segregation and solitary confinement do not, in and of themselves, constitute cruel and unusual punishment." Sheley v. Dugger, 833 F.2d 1420, 1428–29 (11th Cir. 1987); see also, Gholston v. Humphrey, No. 5:12-CV-97-MTT-MSH, 2014 WL 4976248, at *3 (M.D. Ga. Oct. 3, 2014) (dismissing prisoner's claims that his transfer to SMU with more restrictive conditions without a "legitimate penological justification" amounts to an Eighth Amendment violation); Anthony v. Brown, No. CV 113-058, 2013 WL 3778360, at *2 (S.D. Ga. July 17, 2013) (dismissing on frivolity review Eighth Amendment claims based on conditions of confinement in crisis stabilization unit). Plaintiff does allege a plausible claim that the conditions of confinement in the Tier II Unit constitute a deprivation of "the minimal civilized measure of life's necessities." Rhodes, 452 U.S. at 349. Accordingly, the Court should **DISMISS** Plaintiff's claims under the Eighth Amendment.

### B. Deliberate Indifference

The Eighth Amendment imposes duties on prison officials including the duty to take reasonable measures to ensure the safety of inmates. Farmer, 511 U.S. at 828. This right to safety is violated when prison officials show a deliberate indifference to a substantial risk of

serious harm.  Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003) (citing Farmer, 511 U.S. at 828).  In order to prevail on such a claim, the plaintiff must establish the following: (1) there was a substantial risk of serious harm to him; (2) defendant showed a deliberate indifference to this risk; and (3) there is a causal connection between the defendant's acts or omissions and the alleged constitutional deprivation.  Id.

"To be deliberately indifferent a prison official must know of and disregard 'an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"  Id. (quoting Purcell v. Toombs Cty., 400 F.3d 1313, 1319–20 (11th Cir. 2005)). Whether a substantial risk of serious harm exists so that the Eighth Amendment might be violated involves a legal rule that takes form through its application to facts.  However, "simple negligence is not actionable under § 1983, and a plaintiff must allege a conscious or callous indifference to a prisoner's rights."  Smith v. Reg'l Dir. of Fla. Dep't of Corr., 368 F. App'x 9, 14 (11th Cir. 2010).  In other words, "to find deliberate indifference on the part of a prison official, a plaintiff inmate must show: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence."  Thomas v. Bryant, 614 F.3d 1288, 1312 (11th Cir. 2010).

Prison officials are not guarantors of a prisoner's safety.  Popham v. City of Talladega, 908 F.2d 1561, 1564 (11th Cir. 1990).  Rather, a prison official must be faced with a known risk of injury that rises to the level of a "strong likelihood rather than a mere possibility" before his failure to protect an inmate can be said to constitute deliberate indifference.  Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990).

Plaintiff has not plausibly alleged that he faced a substantial risk of serious harm due to his incorrect classification as a Goodfellas Gang member while housed at Ware State Prison. While Plaintiff alleges that inmates from rival gangs may incorrectly assume he is a Goodfellas Gang member because Defendants labeled him as such, he does not allege that other inmates have ever threatened or physically harmed him as a result of that improper classification. Because Plaintiff has alleged only a mere possibility of harm, the Court should **DIMISS** his deliberate indifference claims.

## VI. Due Process Claims

### A. Procedural Due Process

An inmate states a cognizable claim for the deprivation of his procedural due process rights under the Fourteenth Amendment when he alleges the deprivation of a constitutionally protected liberty or property interest, state action, and constitutionally inadequate process. Shaarbay v. Palm Beach Cty. Jail, 350 F. App'x 359, 361 (11th Cir. 2009) (citing Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994)). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556, (1974). Rather, "a disciplinary proceeding, whose outcome will 'impose[ ] atypical and significant hardship on the inmate' must ensure the following due process rights: (1) advance written notice of the claimed violation, (2) a written statement by the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken, and (3) an opportunity to call witnesses and present documentary evidence in his defense." Asad v. Crosby, 158 F. App'x 166, 173 (11th Cir. 2005) (citing Wolff, 418 U.S. at 563–67).

As an initial matter, Plaintiff fails to allege that the outcome of any disciplinary proceeding he faced posed any atypical or significant hardship. Moreover, Plaintiff fails to allege that he received inadequate process at Ware State Prison. While Plaintiff alleges that Defendants failed to follow the prison's standard operating procedures for initially classifying him as a gang member and placing him in administrative segregation upon his arrival to Ware State Prison, his Complaint indicates that prison officials did so in the interest of Plaintiff's own safety.[2] (Doc. 1-1, p. 3.) Plaintiff further claims that he subsequently received a hearing on August 14, 2014, in which his label as a Goodfellas Gang member was removed. (Doc. 1, p. 5.)

Plaintiff also claims that Defendants violated his right to due process by continuing to hold him in administrative segregation after alleged behavioral infractions. However, Plaintiff's Complaint reveals that he also received adequate process regarding this period of detention in the Tier II Unit. Plaintiff alleges that he "used the [p]risoner [g]rievance [p]rocedures available at Ware State Prison," that "Defendants have conducted multiple hearings," and that he has "appealed each and every decision of the [D]efendants[.]" (Doc. 1, p. 5; Doc. 1-1, p. 6.) While Plaintiff's Complaint establishes that he was dissatisfied with the outcome of his process, it does not allege insufficient process. Consequently, Plaintiff cannot sustain a procedural due process claim against Defendants. Accordingly, the Court should **DISMISS** Plaintiff's procedural due process claims.

### B.     Substantive Due Process

"The Due Process Clause protects against deprivations of 'life, liberty, or property without due process of law.'" Kirby v. Siegelman, 195 F.3d 1285, 1290 (11th Cir. 1999)

---

[2] Plaintiff's Complaint states that "Goodfellas Gang members had death threats out against them from other gang affiliations throughout the Department of [C]orrections, which thus placed the safety and well-being of any member of the Goodfellas in jeopardy." (Doc. 1-1, p. 3.) Plaintiff claims that prison officials hold alleged members of the Goodfellas Gang in administrative segregation in order to prevent inmates from rival gangs from carrying out these threats of violence. (Id.)

(quoting U.S. CONST. AMEND. XIV).  The Supreme Court has identified two situations in which a prisoner can be deprived of liberty such that the protection of due process is required: (1) there is a change in the prisoner's conditions of confinement so severe that it essentially exceeds the sentence imposed by the court; and (2) the State has consistently given a benefit to prisoners, usually through a statute or administrative policy, and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Id. at 1290–91 (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).

In Sandin, the United States Supreme Court addressed whether the punishment inmate Conner received for a disciplinary violation was sufficient to invoke a liberty interest protected by the Due Process Clause.  515 U.S. at 472.  Following a disciplinary conviction, Conner received 30 days' disciplinary segregation in a Special Housing Unit.  Id. at 475.  After noting that the segregation was a form of punishment, the Court concluded that it was not a dramatic departure from the conditions of Conner's indeterminate sentence.  Id. at 485. The Supreme Court held there is no right inherent in the Due Process Clause for an inmate not to be placed in disciplinary segregation nor is there a state-created liberty interest to be free from disciplinary segregation.  Id. at 487.  The Court determined that the conditions of disciplinary segregation at the prison where Conner was incarcerated were virtually indistinguishable from the conditions of administrative segregation and protective custody.  Id. at 486.  Also, the Court noted that the conditions of disciplinary segregation were not markedly different from the conditions in general population.  Id.  The Court concluded that the conditions of disciplinary segregation did not impose an "atypical, significant deprivation in which a State might conceivably create a liberty interest."  Id.  Thus, the Court determined that Conner was not entitled to due process protection.  Id. at 487.  The Court observed that this holding was a return to the due process principles of

Wolff v. McDonnell, 418 U.S. 539, (1974), and Meachum v. Fano, 427 U.S. 215 (1976), which required an inmate to suffer a "grievous loss" before a liberty interest could be found. Id. at 478–83. The Sandin Court ruled that in the future, liberty interests "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, (citations omitted), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 480, 484; see also, Rodgers v. Singletary, 142 F.3d 1252, 1253 (11th Cir. 1998) (affirming that two months' confinement to administrative segregation was not a deprivation of a constitutionally protected liberty interest).

An inmate, therefore, has a liberty interest related to his confinement in segregation only if the state has created a liberty interest through the nature of the conditions. Sandin, 515 U.S. at 487. To determine whether the state has created a liberty interest, courts must look to the nature of the conditions of the confinement in relation to the ordinary incidents of prison life, rather than to the language of the regulations regarding those conditions. Id. at 484; Wallace v. Hamrick, 229 F. App'x 827, 830 (11th Cir. 2007). Courts should also consider the duration of the confinement in segregation when determining if the confinement constitutes an atypical and significant hardship. See Al–Amin v. Donald, 165 F. App'x 733, 738 (11th Cir. 2006); see also Williams v. Fountain, 77 F.3d 372, 374 (11th Cir. 1996).

In the present action, Plaintiff has not plausibly alleged that his placement in administrative segregation deprived him of a liberty interest inherent in the Constitution. First, Plaintiff's initial placement in the Tier II Unit was not punitive in nature, as the purpose of this confinement was to promote his own safety. (Doc. 1-1, p. 3.) However, Plaintiff claims that his continued confinement in the Tier II Unit, imposed after the removal of his classification as a

gang member, was punitive in nature because it was based upon false disciplinary reports. Nevertheless, Plaintiff fails to set forth any facts which plausibly could lead to the conclusion that the conditions of administrative segregation imposed an atypical and significant hardship on him relative to the ordinary incidents of prison life. Though Plaintiff claims that, due to his placement in the Tier II Unit, he was not allowed full contact visitation from family, had restricted mail privileges, and was unable to participate in rehabilitative programs, (doc. 1, p. 7), these restrictions do not constitute an atypical or significant hardship in relation to the ordinary incidents of prison life. Thus, Plaintiff's confinement in administrative segregation does not deprive him of a constitutional liberty interest or a state-created liberty interest to which due process could attach.

In short, Plaintiff fails to set forth facts sufficient to render any procedural due process or substantive due process claim plausible against Defendants. Thus, the Court should **DISMISS** Plaintiff's due process claims.

## VII. Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment provides that persons similarly situated should be treated alike. See, e.g., City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). "To establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the [government] engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis." Sweet v. Sec'y, Dep't of Corr., 467 F.3d 1311, 1318–19 (11th Cir. 2006) (internal citation omitted). The equal protection clause prohibits only intentional discrimination. See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

Plaintiff sets forth no facts which indicate that Defendants treated him differently than inmates who are similarly situated to him based on a constitutionally protected basis or that Defendants acted with a discriminatory intent. He has not been categorized into a suspect classification, one based upon his race, religion, sex, or national origin, and he does not allege that Defendants have impinged a fundamental interest. See Moody v. Daggett, 429 U.S. 78, 88, n.7, (1976) (federal prisoners have no constitutionally protected interest in prison classification or rehabilitative programs). According to Plaintiff, Defendants classified him as a Goodfellas Gang member and placed him in the Tier II Unit because he was a resident of Stone Mountain, Georgia. Plaintiff alleges that the Goodfellas Gang is active in Atlanta, Georgia, and that Defendant Toole labeled him as a gang member because Stone Mountain is close in proximity to Atlanta. (Doc. 1, p. 3.) Such classification is reasonably related to a legitimate penological interest. Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 136 (1977) ("There is nothing in the Constitution which requires prison officials to treat all inmate groups alike where differentiation is necessary to avoid an imminent threat of institutional disruption or violence."); Veney v. Wyche, 293 F.3d 726, 731 (4th Cir. 2002) (quoting Heller v. Doe, 509 U.S. 312, 319–20(1993)) ("Ordinarily, when a state regulation or policy is challenged under the Equal Protection Clause, unless it involves a fundamental right or a suspect class, it is presumed to be valid and will be sustained 'if there is a rational relationship between the disparity of treatment and some legitimate government purpose.'"); see also Turner v. Safley, 482 U.S. 79, 89 (1987) (prison regulations that impinge on an inmate's constitutional rights is nevertheless valid if it is reasonably related to legitimate penological interests).

Furthermore, Plaintiff does not allege that similarly situated prisoners are treated more favorably. To the contrary, Plaintiff alleges that Defendants place all alleged Goodfellas Gang members in administrative segregation, regardless of their former city of residency. (Doc. 1,

p. 3.) Even assuming, arguendo, prisoners from outside the metro-Atlanta area are similarly situated, yet are not placed in administrative segregation, courts accord "wide-ranging deference [to prison administrators] in adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979); Alvarez v. Wells, No. CV 312-103, 2013 WL 326214, at *1 (S.D. Ga. Jan. 28, 2013) ("courts have held that prison officials do not offend equal protection principles by excluding prisoners from [prison] programs because of their security classification.") Accordingly, the Court should **DISMISS** Plaintiff's equal protection claims.

## VIII. Leave to Appeal *In Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[3]  Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Or, stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or

---

[3]  A certificate of appealability is not required in this Section 1983 action.

fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's action, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, *in forma pauperis* status on appeal should be **DENIED**.

## CONCLUSION

For the numerous reasons set forth above, I **RECOMMEND** that the Court **DISMISS** this action for failure to state a claim and **DISMISS** Plaintiff's Motion for a Temporary Restraining Order. I further **RECOMMEND** that Plaintiff be **DENIED** leave to appeal *in forma pauperis*.

Any party seeking to object to this Report and Recommendation is **ORDERED** to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A

party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the Plaintiff.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 8th day of March, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA